22-2755. Good morning. Good morning, Your Honor. I'm going to begin the hearing on the case. Thank you, Your Honor. May it please the court. Kendra Hutchinson of Federal Defenders for the appellant in this matter, Mr. Sylvester. This case involves nothing more than a routine, straightforward. Hold on one second. Sure. I'll give you back your time. Thank you, Your Honor. You did not appear to be Susan Kelman. No, no, Your Honor. Good morning. This case involves nothing more than a routine, straightforward application of settled precedent from this court. Accordingly, remand is required for two reasons. Number one, United States v. Gibson, and number two, United States v. Minter, which I know members of this panel are intimately familiar with. Don't ever assume a thing. Thank you. So in United States v. Gibson, about a year old in 2022, this court found that the New York narcotic drug definition was overbroad in as much as it criminalized Naloxonol. And in United States v. Johnson, a case from this summer, a summary order, in a summary order, this court remanded on plain error review for resentencing. And here, this error is preserved, the Gibson error, and I would ask that the court remand. In addition, in United States v. Minter, a recently decided case from September, which Judge Parker authored, this court held that the narcotic drug definition was overbroad for another reason, which is that it criminalizes all cocaine isomers when the federal schedule does not. So for that reason, too, this court should remand for resentencing. Now, the government concedes in its motion that the court has held thus. However, at the last minute, has asked for certification of the two questions. We've set forth extensive briefing, or not briefing, but motion papers on why we think that is unwarranted. But just very, very briefly, you know, this court is bound by its precedent to follow prior decisions, you know, prior panel's decisions. And I think that asking for certification at this late hour would be an end run in many ways around it. You know, the court, you know, the government would be free to seek rehearing, if that's what they wish to do, of a decision in this case. But just as this court did- I'm interested in the case that every panel, and touching on other issues unrelated to this case, potentially, has the ability to certify a question, if it really believes, notwithstanding prior precedent, that, for example, if there were a development in New York law that seemed to be at odds with or in tension with our precedent, would that be a reason to certify? Yes, I think that's right, Your Honor. I think that if there were some development in the law in the intervening time, that would permit the court to, nostra sponte, as I understand from the case law, to certify a question to the New York Court of Appeals. And the case that the government brings up, the Connecticut cases, United States v. Savage, and I believe Cherry v. Garland, those cases involve, you know, two different decisions from this court. And the intervening event was that the Connecticut highest court had developed the law in a way that made this court believe that it needed to re-examine the question. Nothing has happened in the intervening time since United States v. Are there any cases that you're aware of, or that anyone is aware of, in the state court system that might percolate up to the New York Court of Appeals or to an intermediate appellate court that might help shed light on this issue? I'm unaware of any case at this time, Your Honor. The one case that I know of is an older case, an appellate division case, and that is settled, you know, from the first department appellate division. And I'm unaware of any current litigation, and as I understand it, yes. And so, no, I'm unaware of anything, Your Honor. Just because that might be a reason, if not to certify, then to wait. That's right. That's right, Your Honor. And I can understand that, but we, you know, we see no cases that we're aware of that are percolating through the New York state court system. And indeed, you know, delay or waiting is a factor that weighs against certification in this case as we set forth in our filings. Mr. Sylvester has had this case fully briefed for, you know, it's been fully briefed for quite a while. And, you know, his sentence was 42 months in prison, and his guidelines range that he would be under the correct, you know, upon remand is 21 to 27 months. He received a substantial downward departure from the range to 42 months. How long has he been in prison? He was in prison for approximately 24 or 25 months, and Judge Karas let him out on bail pending appeal in December, actually. Okay. At this time he is, so, you know, fortunately he's not in prison. That said, he's near the higher end of that range, and he is under strict home detention at this time, which is not the same thing as the sort of normal, you know, conditions of supervised release, you know. And Judge Karas is not able to proceed with resentencing until this court speaks. Naloxone was being prescribed legally in New York state. So that seems to at least create a question about whether the state intended to criminalize that drug. And so what are we to do? What's the remedy, I guess, here if the Gibson or Minter decisions rest on a misunderstanding of state law? Well, I think the remedy here is, you know, this court must follow the precedent that it has set forth in Gibson and Minter. And, you know, the remedy that, you know, if the government is disappointed or unhappy with this result, which we know that they've been litigating this issue, you know, for many, many different cases, they can seek rehearing in this case. I would note that they have asked for an extension of the rehearing petition deadline in a case in which there was a summary order, United States v. Chairs, from mid-December, from early December. They've sought an extension in that case and are still deciding whether they're going to seek rehearing. That's the remedy that the government could do here. Has the government sought certification before in any of those other cases? I'm sorry, Your Honor. Has the government sought certification before in any of those? No, it has not. It did not in United States v. Gibson, Minter. It did not in this case, even when the Minter issue, you know, the cocaine isomer issue was still pending. You know, they could very well have sought certification in this case then, but they did not. They waited until two weeks before oral argument, you know, when there is settled precedent from this court. And I would note that the precedent in Gibson and Minter, in both cases, this court held that the plain text, the statute's plain text, holds the answer here. And in particular in Minter, the court's, you know, opinion very much stated that, you know, the reasonable probability test does not apply because the plain text of New York statutes hold that, you know, states that the cocaine isomers are overbroad. In that case, certification is. . . What do you say to Judge Park's question about the fact that it's now prescribed legally in New York State? The government advanced these arguments in United States v. Minter, and this court, you know, did not. . . This court rejected them, quite frankly. So this is, again, you revert back to precedent, binding precedent. Yes. And I would also note, Your Honor, that while it is true that, you know, this can be prescribed legally and the government raises this sort of specter of, is it true that New York State is criminalizing its health care practitioners? In fact, New York State has carved out, as most states do, you know, a lawful prescription. You know, it is lawful to prescribe, you know, a controlled substance from the schedules, and it does not meet criminal liability, Your Honor. And for that reason, there really is no. . . There is no state interest in adjudicating this. Thank you very much. Thank you very much. Thank you for serving some time. Two minutes for rebuttal. We'll hear from the government. Mr. Maiman. Thank you. Judge Lohier, Judge Park, Judge Parker, and may it please the Court. New York State's courts have not yet opined on the scope of New York State's schedules 2B1 and 2B4. So what did you think of Minter? That was very well written, Your Honor. I think that Minter looked at this through the lens of the categorical approach, as it should have. However, Minter didn't attempt to wrestle with New York State and what New York State courts would do if presented with the same question, which is really the key here, because the whole point of the categorical approach is to determine, is there a possibility, even a theoretical possibility, that Mr. Sylvester was convicted for selling, in this case, either naloxone or scopolamine back in 2014? If the state says, look, that's not illegal at all under our laws, then the answer is simple. You say if the state says that's not illegal at all. That's the question. Well, that's the question. And the categorical approach tells us that there is a procedure pursuant to which, at least initially, we ought to answer that question. So as you know, the mine run of cases involving a categorical approach, we don't go certify to another state high court. We try to answer the question. Absolutely, but there are at least- By reading the statute. That's absolutely right. But there are at least two things that distinguish this case from the mine run of cases involving the categorical approach. The first is that in the mine run of cases involving the categorical approach, there is state law to look to to help guide the court. So, for example, I think of Delegati, which was trying to figure out whether attempted murder is a crime of violence. One of the things that this court did was it looked to the significant number of state court cases dealing with attempt, dealing with murder, and dealing with attempted murder and trying to figure out exactly what step one has to get to to be convicted of that. The assault cases do the same thing. The state robbery cases do the same thing. That is, they look to state cases which don't happen here. That is, there are no cases here for it to look at. What's to stop you if you disagree with the decision that rests on interpretation of state law to say, no, we should certify that? I mean, isn't that just an end run around us following our own precedent? No, it's not an end run around this court following its own precedent. And the reason for that is this is something that obviously weighs in the minds, as Judge Parker and Judge Lohier remember because they were on the panel with Judge Lynch in Minter. Judge Lynch pointed out that perhaps the right answer here would be to certify. We had not admittedly asked to certify yet at that point, which Judge Lynch pointed out, before going forward. You know, I'm always, actually, I'm frequently in favor of certification. But typically the New Yorker feels we go down the street, we get an answer, comes back, done. But it seems to me that we are now in a bit of a legal pickle because having not certified previously in Gibson, that potentially would have been amenable to certification, or in Minter, we are where we are. So are you aware of a case where we have decided an issue of state law through a binding opinion? Yes. And then a subsequent panel has certified the question that was answered by the prior panel? Yes-ish. Okay. I'll explain that as well. The answer is that there is a case, and I'll end up giving two citations because there are two opinions that factor with each other. It's called Policano v. Herbert. The original opinion is 430 F. 3rd 82. That's in the Second Circuit in 2005. And then the follow-up opinion is 453 F. 3rd 75. And that's in 2006, and that's a per curiam opinion. In Policano, this court affirmed a habeas decision by Judge Gleeson-Below granting habeas in a murder case. It said it had to do with the interplay, which unfortunately we all know it's complex and troublesome, of New York's intentional murder and depraved indifference murder statutes and whether somebody could be convicted under one with certain circumstances involving his intention at the time and the like. And so in the first opinion, this court affirmed the habeas decision. It said, yes, we've decided that the law favors the habeas petitioner here and that Judge Gleeson was correct. And then a year later, the same panel, which had stayed its mandate, certified the questions to the New York State Court of Appeals. So it was a stayed mandate? No, no, no. You said it stayed its mandate. Oh, it stayed. Because it was a mandate. The mandate had not issued. It stayed its mandate. That way there was no new trial for Mr. Policano. But it stayed its mandate. And then a year later, the court decided to certify the question. So at that point, there was binding precedent. No. So the binding precedent occurs as a result of the mandate. Respectfully, it doesn't. The mandate doesn't. So if there is not a mandate, there's a reason why we stay mandates, right? So is there another case where there was an opinion and a mandate that issued, and thereafter either the same panel or another panel certified the same question that was before the prior panel? Not that I know of offhand, Your Honor. But here we have the second issue. The first issue was the lack of any- Well, here you're asking for certification. Yes. Remind me, did you seek a rehearing and mentor? No. As Your Honor may recall, we asked for time to consider that and then ended up not seeking rehearing and mentor and instead sought certification here within days after that. And then I take it, obviously, that you didn't seek cert and mentor or anything of that sort. We did not seek cert and mentor, no. You're trying to use certification to upend a prior opinion of this court, and that's, as Judge Barff suggested, I mean we have procedures if a litigant feels that a case is an important one that got it wrong. But in the mind of cases, I mean that's a rehearing. But this is a fundamentally different case because what Minter and Gibson do is they have holdings that are fundamentally at odds with how New York State appears to actually practice its regulation of controlled substances. Namely, as Judge Park pointed out, naloxagol is sold totally legally as a prescription drug and more importantly as a non-controlled substance prescription drug. That is, even though New York State- This was raised in chairs, right? It was not. In chairs, the issue was whether the categorical approach should apply at all, or at least this is the issue that Judge Sullivan brought up in his concurrence, was whether the categorical approach should apply at all in the guidelines situation. And it was Judge Sullivan- And no one's deciding whether to seek rehearing on that issue? It's a different district, but I understand that they've asked to hold the mandates. They can consider that, so I assume that that's exactly what they are considering, is whether to seek rehearing on BOG, because as Judge Sullivan pointed out, you would need to go on BOG in order to address this issue. So chairs is a different issue. That is, it isn't the mismatch issue that we have here. It's the categorical approach at all issue, which is wholly different. So you have naloxagol, which is sold not as a controlled substance, and importantly, New York Public Health Law 3331 sub 2, which Ms. Hutchinson refers to, does say that practitioners can prescribe controlled substances in good faith, but then sub 3 and sub 4 of that say among the things that you have to do in order to prescribe it in good faith. It has to be labeled as a controlled substance. There has to be a bright, I believe it's either orange or red sticker, that says this is dangerous. Do not use it in this way. There are limitations on being able to re-prescribe it, on being able to fill larger prescriptions and the like. Moreover, there are companies that import naloxagol and scopolamine into New York State, and they have to follow procedures for handling controlled substances as controlled substances. Has it always been that way? In other words, I don't want to get into the history of naloxagol, but was it always a non-controlled substance? I haven't seen any evidence that it was ever considered to be a controlled substance in New York State. And the reason for that is, again, this is a question of just how far down the rabbit hole the word derivative goes. As the D.C. Circuit recognized back in 1986, the word derivative has to have some sort of significant limitations on it. And the D.C. Circuit said, look, we'll let the DEA define it as it wants under Chevron deference, but that doesn't bind the New York State courts or the New York State Department of Health. And the New York State Department of Health does not list naloxagol on its PMP registry list of controlled substances that are also prescription drugs. If Mr. Sylvester wins, when is he released? If Mr. Sylvester wins, he goes back for a resentencing. He's already released. That's right. That's what I assumed Your Honor meant. The answer is it depends on what Judge Karras decides to do at the resentencing. Judge Karras could, for example, decide to vary upward from the guidelines that apply to Mr. Sylvester. He could decide to sentence him to time served at that point. It's a resentencing hearing in front of Judge Karras, and it's impossible for me to predict precisely what will happen there because there's no legal bound on it other than the statutory bounds that already existed. So here we have a problem that it's not just naloxagol, also scoplamine. If any of the court suffers from seasickness, there's a good chance that you've been prescribed scoplamine. That too, that is a constitutional isomer of cocaine that is sold as a non-prescription substance. And right now, there's a problem in that in New York State, practitioners are doing something that on the one hand, New York State seems to tell them it's totally okay to treat these drugs this way. And on the other hand, this court seems to be telling them no, it's not. And I don't think that it is foolish to think that one day when some user suffers a bad reaction to either scoplamine or naloxagol, and we know that there's bad reactions to all drugs at some point among people, that some clever plaintiff's lawyer is going to... Mr. Maimon, maybe what you're doing is pointing out a problem with the categorical approach. Well... And the question from Parker was that, you know, when you look at the plaintext, that that approach is, you, I think, agree, consistent with the categorical approach, plaintext and statute. The plaintext and statute, but New York State has a different mode of interpreting the plaintext of the statute. The problem is, you know, the categorical approach covers a very substantial body of law this court administers. And then to use, to depart from plaintext and go to the New York Court of Appeals to do our work for us doesn't seem to me to be a particularly inviting prospect. The confusion will be around us. Well, again, I don't think that it's necessary in every categorical approach case. In fact, probably not in most. Here we have the unusual case where we have an actual body of practice in New York State, as Judge Park pointed out, that seems at direct odds with the categorical approach result. With the categorical approach. No, with the categorical... This is the problem. This is the problem. And, you know, we've all, for different reasons, expressed some concerns about this approach. But the approach is categorical. In other words, it does not allow us to see beyond or look beyond the text. Now, whether that's realistic, whether that's wise, whether that's prudent is another issue. But, you know, we've been talking about binding precedent from our own court. We're also bound by the Supreme Court and what it tells us, how it tells us to engage in this approach. But I don't think that that's actually 100% accurate. It's not that you aren't allowed to look beyond the plaintext. First of all, this court looks beyond the plaintext all the time in categorical approach cases when it looks to state law cases where they exist. And the problem is they don't exist here in order to figure out the bounds of what the state means by its words in the text. But also, I don't think that anybody has disputed that if, let's take a Cherry v. Garland type situation, if tomorrow the New York State Court of Appeals were to rule in a case, hey, derivative only means up to three steps from the original substance, and so naloxagol is not covered. Isomers only means optical and geometric isomers. I'm just saying hypothetically. If they said that, I don't think anybody disagrees that then Minter and Gibson would be abrogated by that decision. That eventuality is hypothetically possible in zillions of categorical approach cases. State changes the law about what's an attempt. State changes the law about what's a crime of violence, et cetera, et cetera. Chaos. But here you have the ironic situation that it's because it appears that New York State does not in fact criminalize the sale of scoplamine or naloxagol that that case is unlikely ever to occur in New York State in the first place. That is, New York State will not have the realistic opportunity to opine on the reach of its own laws, absent certification in this case, because realistically nobody is appealing their convictions for selling scoplamine or naloxagol because it appears New York State does not actually consider them to be illegal substances. I think we've got your argument well in hand. Thank you, Your Honor. We'll hear from your friend on the other side. I'll be very brief because I think we've taken a lot of the court's time. I think this panel's questions really expressed more eloquently than I can the real problem with the government's argument. This is an end run around the binding precedent out of this court. The horse is out of the barn. The government has ample vehicles to pursue should they disagree with this court's decision, and those vehicles could be in this court and they could also be in the Supreme Court of the United States, and that's what they're deciding in chairs at this point, and likely they'll decide in this case if the court holds in our way, in our favor. I point out something that we really haven't talked about yet, which is that in order for certification to lie, the issue must be outcome determinative. Now, we have two issues here, actually, and the government really centers its arguments on Naloxonol and how it's prescribed so much and there's no cases about it, and in some ways they're really questioning the value of Gibson, but what we have in this court, from this court, is United States versus Minter, and that is a very clear case. So even if this court has doubts about Gibson or Naloxonol, Minter would be outcome determinative in this case, and indeed I think in chairs the government conceded that remand was required under Minter. So, and then I guess finally the last thing I'll say, and I'll sit down, is whatever the court's criticisms or anyone's criticisms of the categorical approach, and it's true there are many and I understand it, this court is very good at doing it. This court is very good at applying the categorical approach it has here. It does not need to punt this to the New York Court of Appeals and add to its workload. Thank you. Thank you very much. A well-deserved decision. Thank you both. Appreciate it.